**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| David Oquendo-Rivas<br>*Petitioner*<br><br>v.<br><br>United States of America<br>*Defendant* | CIVIL NO. ---- (JAG)<br>Related to CRIM. NO. 09-427(JAG) |

**MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO TITLE
28 U.S.C.A. § 2255**

TO THE HONORABLE JAY A. GARCÍA-GREGORY
UNITED STATES DISTRICT JUDGE
FOR THE DISTRICT OF PUERTO RICO

The petitioner, Mr. David Oquendo-Rivas ("Mr. Oquendo"), represented by the Federal Public Defender for the District of Puerto Rico ("FPD") through the undersigned attorney, respectfully states and requests:

**INTRODUCTION**

Mr. Oquendo challenges the validity of his conviction on March 8, 2013, for charges of violating 18 U.S.C. §§ 1959(a)(1), (a)(5) and 2 (Violent Crime in Aid of Racketeering Activity "VICAR"), and carrying firearms during and in relation to crimes of violence in violation of 18 U.S.C. §§ 924(c)(1)(A), (j)(1) and 2. He also challenges his sentence of life imprisonment as imposed by the district court on October 29, 2013. (DE No. 1188.) Mr. Oquendo filed a motion requesting appointment of attorney on

July 16, 2018. (DE No. 1373.) The FPD was appointed to represent Mr. Oquendo on his 28 U.S.C.A. § 2255 petition on September 24, 2018. (DE No. 1438.)

## PROCEDURAL BACKGROUND

A federal grand jury returned a fifty-two count third superseding indictment against Mr. Oquendo and his codefendant Alexis Candelario ("Candelario"). (DE No. 579.) The latter was the head of a drug-trafficking organization in Sábana Seca, Toa Baja, Puerto Rico. According to the government's theory at trial, Candelario fled the island to avoid arrest for prior offenses. He left his cousin, Wilfredo Semprit–Santana ("Rufo"), and Carmelo Rondón–Feliciano ("Omi") in charge of the drug point and they would pay rent to candelario for the use of the drug point. Candelario was later jailed in state court for unrelated offenses to the instant case. He started having issues with Rufo and Omi and they stopped making payments to Candelario.

The government alleged that Candelario ordered and partook of a shooting at the La Tómbola, a bar that Rufo opened on October 17, 2009. There were nine people killed and more than a dozen were injured. Mr. Oquendo was identified as one of the shooters. The case was certified as a death penalty case and Mr. Oquendo entered a plea of not guilty and presented a mistaken identity defense at trial. The 11-day jury trial was held in the district court of Puerto Rico from February 21 to 22, 25 to 28 and March 4 to 8, 2013.

On March 8, 2013, the jury found Mr. Oquendo guilty of all charges,[1] specifically: (a) counts 2 to 10 of VICAR in violation of 18 U.S.C. §§ 1959(a)(1) and 2; (b) counts 11 to 12 of carrying firearms during and in relation to crimes of violence in violation of 18 U.S.C. §§ 924(j)(1), (c)(1)(A) and 2; (c) counts 13 to 19 of carrying firearms during and in relation to crimes of violence in violation of 18 U.S.C. §§ 924(j)(1) and 2; (d) counts 29 to 41 of VICAR in violation of 18 U.S.C. §§ 1959(a)(5) and 2; (e) counts 43 to 45 of VICAR in violation of 18 U.S.C. §§ 1959(a)(5) and 2, and (f) counts 47 to 49 of VICAR in violation of 18 U.S.C. §§ 1959(a)(5) and 2. (DE No. 985.)

On October 24, 2013, he was sentenced to life in prison on counts 2 to 11 and 13 to 19, 120 months on counts 29 to 41, 43 to 45, and 47 to 49, all to be served concurrently with each other. He was also sentenced to life as to count 12, which was to be served consecutive to all other counts. (DE No. 1188.) On appeal, Mr. Oquendo unsuccessfully argued, *inter alia*, that (1) the statements he made to a Puerto Rico Police Department ("PRPD") officer were fruit of an arrest lacking probable cause and in violation of his Miranda rights; (2) that the questioning by an ATF agent was in violation of Mr. Oquendo's Fifth and Sixth Amendment rights; (3) that he was deprived of a fair trial as a result of erroneous identification and evidentiary spillover, including prosecutorial misconduct; (4) that there was insufficient evidence to sustain his VICAR and VICAR firearm convictions in absence of proof that he was part of the drug

---

[1] His codefendant, Alexis Candelario, was also found guilty.

enterprise; and (5) errors in the jury instructions. Appeal No. 13-2427, *United States v. David Oquendo-Rivas*.

On August 17, 2016, the United States Court of Appeals for the First Circuit issued an opinion affirming Mr. Oquendo's conviction. *See United States v. Candelario-Santana*, 834 F.3d 8 (1st Cir. 2016), cert. denied, 137 S. Ct. 1112, 197 L. Ed. 2d 215 (2017), and cert. denied sub nom. *Rivas v. United States*, 138 S. Ct. 64, 199 L. Ed. 2d 46 (2017). The First Circuit, however, vacated the conviction of Alexis Candelario who among other things argued that the district court erred when it closed the trial to the public to allow the testimony of a witness who averred feeling intimidated by Candelario. The Court of Appeals held that "the district court's closing feint to facilitate the reluctant witness's testimony constituted a constitutionally impermissible closure, effecting structural error." *Candelario-Santana*, 834 F.3d at 21. The Court's decision hinged on the objection lodged by trial counsel for Mr. Candelario. In contrast, it stated on a footnote that Mr. Oquendo's trial counsel "expressly waived any public trial claim by affirmatively stating, in reply to the district judge's inquiry as to his consent to the closing, "I don't mind."" *Id.* at 21 n.3.

On September 20, 2016, appellate counsel filed a Petition for Rehearing where it argued that there was no valid waiver of Mr. Oquendo' s Right to Public Trial. It bears noting that appellate counsel did not raise this argument in either the opening or reply briefs. On February 24, 2017, appellate counsel filed a Petition for a writ of certiorari. According to a draft provided by appellate counsel, the question presented for review was whether the right to a public trial can be waived without the defendant's consent

or knowledge, and if not, what must be shown to establish a valid waiver.[2] On October 2, 2017, the Supreme Court denied Mr. Oquendo's petition for certiorari. *See David Oquendo-Rivas v. United States*, No. 16-8496.

## ARGUMENTS AND AUTHORITIES

### A. MR. OQUENDO PRESENTS A TIMELY CLAIM

A federal prisoner may move to "vacate, set aside or correct" his sentence if it "was imposed in violation of the Constitution. . .was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). Title 28 U.S. Code § 2255 further provides that any such motion should be made in the "court which imposed the sentence[.]" This Court therefore has jurisdiction over this habeas action.

28 U.S.C. § 2255. A 1-year period of limitation shall apply to a motion under this section. The period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[2] The undersigned has requested but not yet received a copy of the final petition for certiorari, and the same is not available online.

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2255(f) (West).

Because Mr. Oquendo filed a petition for writ of certiorari following affirmance on direct appeal, the judgment became final on October 2, 2017, when the Supreme Court denied his petition for certiorari. *See Clay v. United States*, 537 U.S. 522, 527 (2003). Mr. Oquendo's motion is thus timely under 28 U.S.C. § 2255(f)(1).

## B. GROUNDS FOR RELIEF

### I. Ineffective Assistance at Trial

The Constitution guarantees defendants "[i]n all criminal prosecutions . . . the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI; see *Kansas v. Ventris*, 556 U.S. 586 (2009). The "right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). An attorney renders constitutionally ineffective assistance when his or her performance "f[alls] below an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 688, 694. Because courts "presume that the lawyer [was] competent to provide the guiding hand that the defendant need[ed]," the burden is on the petitioner to show that a constitutional violation occurred. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

Mr. Oquendo submits that his trial counsel rendered ineffective assistance by:

(1) Failing to object to the closure of the courtroom to allow the testimony of a witness for the prosecution.

(2) failing to conduct a reasonable investigation into the erroneous identification.

(3) failing to adequately challenge the witnesses testimonies about the type of firearms that Mr. Oquendo was allegedly seen holding in the night of the events.

(4) failing to investigate and/or offer cellsite/cellphone evidence, which could have proven that on the night of the events in question Mr. Oquendo was not at La Tómbola during the shooting.

(5) not allowing Mr. Oquendo to testify on his behalf.

(6) failing to duly explain the risk/benefits of polygraphs examinations to Mr. Oquendo.

(7) not addressing the government's failure to comply with subpoena procedures during trial.

In assessing the first prong of the *Strickland* test, courts assess whether the performance of the counsel at issue was reasonable "under prevailing professional norms." *United States v. Márquez-Pérez*, 853 F.3d 153, 165 (1st Cir. 2016) (quoting *Strickland*, 466 U.S. at 688). "Though the standard for counsel's performance is not determined solely be reference to codified standards of professional practice, these standards" – including the American Bar Association ("ABA") Standards for Criminal Justice – "can be important guidelines." *Missouri v. Frye*, 566 U.S. 134, 145 (2012).

Moreover, among other professional obligations, defense counsel has an affirmative duty to investigate the facts of his client's case, "including facts relating to possible defenses and mitigation of punishment, and to prepare for trial." John Wesley Hall, *Prof. Resp. Crim. Def. Prac.* 3d § 35:25 (2010). *See also Strickland*, 466 U.S. at 690-91. A trial attorney's "generally creditable" performance at trial does not excuse an "apparent and pervasive failure to 'make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Kimmelman v. Morrison*, 477 U.S. 365, 386 (quoting *Strickland*, 466 U.S. at 691)). ABA Standard 4-4.1(a) provides that:

> [d]efense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

The commentary to ABA Standard 4-4.1 provides:

> Effective investigation by the lawyer has an important bearing on competent representation at trial, for without adequate investigation the lawyer is not in a position to make the best use of such mechanisms as cross-examination or impeachment of adverse witnesses at trial. . . . The lawyer needs to know as much as possible about the character and background of witnesses to take advantage of impeachment.
>
> The effectiveness of advocacy is not to be measured solely by what the lawyer does at the trial; without careful

> preparation, the lawyer cannot fulfill the advocate's role. Failure to make adequate pretrial investigation and preparation may be grounds for finding ineffective assistance of counsel.

A habeas petitioner must show that counsel's performance was deficient by in turn "showing that counsel made errors so serious that [he or she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, a petitioner claiming ineffective assistance must show that he or she was "prejudiced" by his attorney's deficient performance. *Id.* Prejudice is demonstrated "when there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Id.* at 694; *see also Gonzalez-Soberal v. United States*, 244 F.3d 273, 278 (1st Cir. 2001).

Mr. Oquendo contends that his trial counsel was ineffective because he failed to conduct a reasonable investigation in preparation for trial and consequently, to demonstrate his innocence at trial. From the brief discussion the undersigned has had with Mr. Oquendo, it appears that trial counsel failed to conduct an investigation into the erroneous investigation. Trial counsel also failed to conduct an investigation and offer into evidence cellsite data that could prove that Mr. Oquendo was not at the place of the events, contradicting the government's theory. Trial counsel also failed to challenge the witnesses' credibility and identification even though they each testified that Mr. Oquendo was holding three different firearms on the night of the events. This was a contradiction that should have been adequately challenged. These errors,

individually and taken together, constituted a deficient investigation which undoubtedly undermined trial counsel's ability to contest the government's evidence at trial. This failure was particularly grave considering this was a death penalty trial. As a result, Mr. Oquendo was provided ineffective assistance of counsel as measured by prevailing professional norms.

Additionally, trial counsel's deficient performance prejudiced Mr. Oquendo. To show prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Strickland*, 466 U.S. at 694. As a result of trial counsel's deficient investigation, Mr. Oquendo was found guilty of the crimes charged. The result is a life sentence. The lack of an objection by trial counsel to the district court's closure of the courtroom is the most egregious of counsel's failures. Moreover, trial counsel did not consult Mr. Oquendo as to the closure of the courtroom. The failure to object resulted in a calamitous violation of Mr. Oquendo's fundamental rights. Trial counsel's performance was deficient to the level of an error "so serious that [he or she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Mr. Oquendo was undoubtedly prejudiced by trial counsel deficient performance.

Trial counsel's failure to object in this case "f[a]ll below an objective standard of reasonableness." *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007)(internal quotes and citation omitted). The prejudice to Mr. Oquendo is also evidenced by the fact that

the codefendant's conviction was vacated and the case remanded due to the closure. *See Candelario-Santana*, 834 F.3d at 24 ("given the district court's statements undermining the witness's concerns and the absence of any finding of an overriding interest, we cannot find that the closure in this case was constitutionally permissible and must vacate and remand as to Candelario.")

Because the FPD was appointed to represent Mr. Oquendo less than 6 business days ago, and AEDPA's 1-year statute of limitation is due today, the petition is being filed in broad terms. Therefore, this petition and this ground for relief will be amended as soon as the client's file is obtained, and the undersigned is able to conduct the appropriate research and investigation.

## II.     Ineffective assistance in Appellate Proceedings

Mr. Oquendo submits that his trial counsel rendered ineffective assistance by failing to raise on his opening or reply brief the trial counsel's failure to object to the closure of the courtroom. While appellate counsel did raise the issue on petition for rehearing and on the petition for certiorari, the closure could have been raised on appeal under plain error. The undersigned has been unable to access the sealed filings that could inform appellate counsel's reasons for not doing so. However, in order to preserve Mr. Oquendo's rights the undersigned is including this ground for relief with the information currently available.

Because the FPD was appointed to represent Mr. Oquendo less than 6 business days ago, and AEDPA's 1-year statute of limitation is due today, the petition is being filed in broad terms. Therefore, this petition and this ground for relief will be amended as soon as the client's file is obtained, and the undersigned is able to conduct the appropriate research and investigation.

### III. The district court closure of the courtroom violated Mr. Oquendo's fundamental rights

The right to public trial is a fundamental right the violation of which constitutes structural error. *Waller v. Georgia*, 467 U.S. 39 (1984). "A waiver of a constitutional right must be voluntary, knowing and intelligent, that is, the act of waiver must be shown to have been done with awareness of its consequences." *United States v. Canady*, 126 F.3d 352, 359 (2d Cir. 1997). Decisions to waive fundamental rights must be left to defendants. Mr. Oquendo was neither present at the in chambers conference, nor consulted before the judge and counsel and the witness returned to the courtroom, which was then closed to the public. Mr. Oquendo did not waive his right to a public trial. Courts in general "indulge every presumption against waiver," or "acquiescence in the loss of fundamental rights." *Johnson v. Zerbst*, 308 U.S. 458, 474 (1938)(right to counsel).

Because the FPD was appointed to represent Mr. Oquendo less than 6 business days ago, and AEDPA's 1-year statute of limitation is due today, the petition is being filed in broad terms. Therefore, this petition and this ground for relief will be amended

-12-

as soon as the client's file is obtained, and the undersigned is able to conduct the appropriate research and investigation.

### IV. Mr. Oquendo's Fifth and Sixth Amendment rights were violated

The statements made by Mr. Oquendo to a Puerto Rico Police Department ("PRPD") officer were fruit of an arrest lacking probable cause, in violation of his *Miranda* rights, and should have been suppressed. Moreover, the questioning by the ATF agent was in violation of Mr. Oquendo's Fifth and Sixth Amendment rights. Mr. Oquendo was arrested and taken to a police station where he as given his rights. He declined to waive them. He also declined when presented with a waiver form by the ATF. When a suspect invokes his right to remain silent, "a Fifth Amendment violation is presumed" unless the prosecution demonstrates that his right to cut off questioning was "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 103-4. That is not the case here.

Because the FPD was appointed to represent Mr. Oquendo less than 6 business days ago, and AEDPA's 1-year statute of limitation is due today, the petition is being filed in broad terms. Therefore, this petition and this ground for relief will be amended as soon as the client's file is obtained, and the undersigned is able to conduct the appropriate research and investigation.

## V.    Erroneous Identification

Mr. Oquendo was deprived of a fair trial as a result of erroneous identification and evidentiary spillover, including prosecutorial misconduct. Evidentiary spill over, the misstatement of the evidence at trial, and the prosecution's improper comments rendered a verdict based on fear instead of proof. Mr. Oquendo's mother-in-law, sister-in-law and wife all testified that on the night of the events, he arrived at his home around 9:00 PM, and was with them there until all heard the shooting outside their house. A security guard also recalled his entry and seeing Mr. Oquendo in front of the family home during his round. This was 15-20 minutes after the shooting.

One of the witnesses that identified Mr. Oquendo in La Tómbola (Maysonet), managed to pick his photo out of an unrecorded 6-person array over a year later and then falsely denied under oath she had done so. She also claimed to have identified him from the newspaper, even though his photo was never published. The other two persons that identified him (Ramos and Amézquita) knew him from the neighborhood and knew he had been arrested in relation to the events. Mistaken identifications are not uncommon. Mr. Oquendo resembled someone else named "Jason", or "Jay", identified by some witnesses as the other shooter. This person lived in Sector 26, same as Mr. Oquendo and the other two witnesses (Ramos and Amézquita). It bears noting that Rufo did not identify him as one of the shooters. There is credible evidence that

-14-

Mr. Oquendo was misidentified and at the very least, a hearing is necessary to properly address this claim.

Because the FPD was appointed to represent Mr. Oquendo less than 6 business days ago, and AEDPA's 1-year statute of limitation is due today, the petition is being filed in broad terms. Therefore, this petition and this ground for relief will be amended as soon as the client's file is obtained, and the undersigned is able to conduct the appropriate research and investigation.

## Conclusion

In summary, Mr. Oquendo's § 2255 motion challenging his conviction presents a timely cognizable claim, and his conviction should be vacated. The undersigned is filing this motion to comply with the 1-year AEDPA statute of limitations. However, it must be stressed that the FPD was appointed on September 24, 2018, that is, less than 6 business day ago. This was an extremely complicated case with a docket containing thousands of pages of documents and transcripts. The undersigned has not been able to speak to Mr. Oquendo for more than 20 minutes since the FPD was appointed, and has attempted to include all possible grounds for relief after informing him of the ones identified. However, the petition will need to be amended once she has reviewed the documents, spoken to Mr. Oquendo and conducted the appropriate research.

**RELIEF REQUESTED**

**WHEREFORE**, Mr. Oquendo, by and through undersigned counsel, respectfully moves the Honorable Court to note the foregoing motion and grant the petitioner's § 2255 motion, thereby vacating his conviction and sentence.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify the parties of record. Mr. Oquendo is currently being transferred to another prison, but the undersigned certifies that a copy of the motion will be mailed when he arrives at the institution he is finally designated.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 2nd day of October of 2018.

**ERIC ALEXANDER VOS**
**CHIEF DEFENDER**
**DISTRICT OF PUERTO RICO**

*S/ Liza L. Rosado-Rodríguez*
LIZA L. ROSADO-RODRÍGUEZ
Research and Writing Specialist
USDC-PR No. 228707
241 Franklin D. Roosevelt Avenue
San Juan, Puerto Rico 00918-2441
Tel. (787) 281-4922/Fax. (787) 281-4899
Email: liza_rosado@fd.org